**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MARCEL ALAN SLOAN-BROWN,                    Case No. 26-cv-1488 (LMP/DTS)

        Plaintiff,

v.                                                      **ORDER GRANTING**
                                                        **MOTION TO DISMISS**
WESTLAKE FINANCIAL
SERVICES, LLC,

        Defendant.

---

Marcel Alan Sloan-Brown, pro se.

Patrick D. Newman and Preandra Landrum, **Bassford Remele, Minneapolis, MN**, for Defendant.

On February 17, 2026, Plaintiff Marcel Alan Sloan-Brown filed this action against Defendant Westlake Financial Services, LLC,[1] alleging that Westlake repossessed his car in violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, ECF No. 1 ¶¶ 66–73, and state law, *id.* ¶¶ 43–65.  On the same day, he filed four motions: (1) a motion for expedited hearing; (2) a motion to stay arbitration; (3) a motion for replevin; and (4) a Rule 12(e) motion for a more definitive statement.  *See* ECF Nos. 2– 5.  Westlake now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 17.  The Court grants the motion to dismiss, dismisses Sloan-Brown's complaint without prejudice, and denies all other motions as moot.

---

[1]    Westlake notes that Sloan-Brown misidentifies it in the complaint, and it is properly identified as Westlake Services, LLC d/b/a Westlake Financial.  ECF No. 18 at 1 n.1.

## BACKGROUND[2]

Sloan-Brown alleges that he and Westlake entered a security agreement on July 8, 2023. ECF No. 1 ¶ 7; *see also* ECF No. 1-2 at 7–12.[3] Westlake agreed to provide financing to Sloan-Brown so that Sloan-Brown could buy a car from a dealer in Burnsville, Minnesota. ECF No. 1-2 at 7.[4] In exchange, Westlake took a security interest in the car. *Id.* at 10. Under the agreement, Sloan-Brown was required to make 60 months of payments beginning on August 11, 2023. *Id.* at 7. At the bottom of each page of the agreement is fine print that states that the "original document" is owned by Westlake "and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party." *See id.* at 7–12.

Sloan-Brown sent Westlake a series of letters and emails from September to December 2025, purporting to establish himself as power-of-attorney and claiming that his obligations under the agreement were discharged. ECF No. 1 ¶¶ 17–25. Even so, on January 1, 2026, Westlake sent Sloan-Brown a letter telling him that his account was

---

[2]   Because Sloan-Brown is proceeding pro se, the Court is mindful to liberally construe his pleadings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

[3]   Sloan-Brown attached several exhibits to his complaint, which the Court may consider at this stage. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) ("[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint.").

[4]   Technically, Sloan-Brown entered the agreement directly with the dealer. ECF No. 1-2 at 12. The dealer, however, immediately assigned the contract to Westlake, *id.* and Sloan-Brown acknowledges that the agreement is between himself and Westlake, ECF No. 1 ¶ 7.

delinquent and that he had "failed to respond to our notices." ECF No. 1-3 at 22. Westlake also warned Sloan-Brown that failure to reply would result in "further collection activity." *Id.* In response, Sloan-Brown again claimed that the account had been discharged. ECF No. 1 ¶ 28. Westlake then sent two more default notices, generally informing Sloan-Brown that Westlake might repossess the car if payment was not made. ECF No. 1-4 at 4–7. Sloan-Brown never made a payment, and Westlake repossessed the car on February 1, 2026. ECF No. 1-5 at 8–9; ECF No. 1 ¶ 39.

Sloan-Brown filed this action on February 17, 2026, asserting that Westlake had no authority to repossess the car, and that Westlake's collection notices and ultimate repossession violated the FDCPA and state law. ECF No. 1. Westlake moves to dismiss under Rule 12(b)(6). ECF No. 17.

## ANALYSIS

In determining whether a complaint states a claim under Rule 12(b)(6), the Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). A claim has is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.     The FDCPA

Sloan-Brown argues that Westlake violated the FDCPA because it "represented itself as having the authority to enforce the security interest" and "repossess the vehicle" even though it was merely a "custodian" of the security agreement that had no legal right to enforce the agreement.  ECF No. 1 ¶¶ 68, 70.  As evidence, Sloan-Brown points to the fine print that states the agreement "is owned by Westlake" and "is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party."  *See id.* at 7–12.

It is true that the FDCPA prohibits a debt collector from engaging in certain abusive practices, such as mispresenting the status of said debt collector.  *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1121 (8th Cir. 2020) (quoting 15 U.S.C. § 1692(e)) (noting that the FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors"); *see also* 15 U.S.C. § 1692e (prohibiting debt collectors from making a "false, deceptive, or misleading representation . . . in connection with the collection of any debt").

But the FDCPA's prohibitions apply only to a "debt collector," 15 U.S.C. § 1692k(a), defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6).  "These have come to be known as the principal purpose and the regularly collects definitions."  *Reygadas*, 982 F.3d at 1122 (citation omitted).

4

Sloan-Brown fails to plead facts showing that Westlake is a debt collector under either the principal purpose or regularly collects definitions.  Creditors do not qualify under the "regularly collects" definition because it only applies to those who collect "debts owed or due . . . another."  15 U.S.C. § 1692a(6).  Here, Westlake—as the assignee and owner of the security agreement—is a creditor.  *Id.* § 1692a(4) (defining a creditor as a person "to whom a debt is owed"); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (holding that a creditor includes any debt owner, "whether the owner originated the debt or came by it only through a later purchase"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (citation omitted) (explaining that, except under circumstances not relevant here, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt").  As to the "principal purpose" definition,[5] Sloan-Brown provides no factual allegations that the principal purpose of Westlake's business "is the collection of any debts."  15 U.S.C. § 1692a(6).  Indeed, Sloan-Brown provides no information about Westlake's business at all.  Without doing so, he does not adequately plead that Westlake is a debt collector under the primary

---

[5]     Westlake asserts that its status as a creditor shields it from qualifying under either definition.  ECF No. 18 at 9 (citing *Henson*, 582 U.S. at 83) ("[T]he FDCPA applies only to 'debt collectors,' and does not reach entities collecting debts on their own behalf.").  But that is an overly broad reading of *Henson*, which only considered whether a creditor qualifies under the "regularly collects" definition.  *Henson*, 582 U.S. at 82 (explicitly noting that the parties had not presented a "principal purpose" argument).  The Eighth Circuit has since confirmed that a creditor can be a debt collector if the creditor's "principal purpose" is the collection of debts.  *Reygadas*, 982 F.3d at 1124 ("If Congress had intended the broad creditor exclusion urged by [creditor], it would simply have provided that a 'debt collector' is 'any business that regularly collects any debt.'").

purpose definition. *Reygadas*, 982 F.3d at 1125 (noting that even "consumer debt buyers" who collect defaulted debts may not qualify as debt collectors if they also "engage in a wider array of activities, such as originating consumer loans, reselling debt portfolios, or offering other financial services").

Sloan-Brown appears to assert that Westlake is not the owner of the security agreement because, at the bottom of the agreement, there is text that says that the "original document" is owned by Westlake "and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party." *See* ECF No. 24 at 4, 6 (quoting ECF No. 1-2 at 7–12). Although Sloan-Brown does not explicitly say so, the Court construes his argument as asserting that Westlake is not a creditor, did not have the authority to repossess his car as a creditor, and can qualify as a debt collector. But even if that is true,[6] Sloan-Brown provides no factual allegations that Westlake's "principal purpose . . . is the collection of any debts," or that Westlake "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). While Sloan-Brown alleges that Westlake attempted to collect *his* debt, "one instance of debt collection is not enough to show someone 'regularly' collects debts." *Cordtz v. Johnson Legal Offs., LLC*, No. 121-cv-02003 (MHC/LTW), 2022 WL

---

[6]    Westlake asserts that Sloan-Brown's argument is belied by his complaint and the documents attached to his complaint, which show that even Sloan-Brown considered Westlake to be the financer for his loan. ECF No. 25 at 3–6. For example, Sloan-Brown himself alleges that he and Westlake "entered into a security agreement," and that he repeatedly initiated contact with Westlake to negotiate payment on the loan, *see, e.g.*, ECF No. 1 ¶¶ 17–25.

17908679, at *6 (N.D. Ga. Sept. 30, 2022); *see Lynch v. Custom Welding & Repair, Inc.*, 142 F. Supp. 3d 814, 822 (N.D. Iowa 2015) (granting motion to dismiss when "the record contains only a single debt-collection letter"); *Martinez Dominguez v. Caparra Country Club*, No. CV 17-1395 (DRD), 2018 WL 456158, at *8 (D.P.R. Jan. 16, 2018) (holding that "the initiation of a single collection" failed to show regular debt collection activity). Courts often require much more. *Nagle v. Little*, No. 24-cv-2156 (LMP/JFD), 2025 WL 1651104, at *3 (D. Minn. June 11, 2025) (collecting cases for the proposition that a "negligible number of collection-related" activities does not suffice to render an entity a "debt collector").

In sum, because Sloan-Brown does not plead any facts establishing that Westlake is a debt collector, Sloan-Brown does not state a claim that Westlake violated the FDCPA. After all, even if Westlake engaged in abusive practices, if Westlake "is not a debt collector for purposes of the FDCPA, the statute does not apply." *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 950 (8th Cir. 2006).

## II.     State-Law Claims

The remainder of Sloan-Brown's complaint raises state-law causes of action. ECF No. 1 ¶¶ 43–65 (asserting claims that Westlake violated the UCC, that the repossession of his car constitutes conversion, and that Westlake was unjustly enriched); *see also Huie v. Trans Union LLC*, No. 25-cv-3885 (LMP/DJF), 2026 WL 281454, at *4 (D. Minn. Jan. 22, 2026) ("Minnesota has adopted the UCC, *see* Minn. Stat. § 336.1-101 *et seq.*, meaning that [plaintiff's] UCC claims arise under Minnesota state law.").

Federal courts are courts of limited jurisdiction, and district courts "may not exercise jurisdiction absent a statutory basis." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (citation omitted). Congress has provided two categories of cases for which original federal jurisdiction is appropriate. First, 28 U.S.C. § 1331 provides jurisdiction for cases that arise under federal law, which is commonly known as federal-question jurisdiction. Second, 28 U.S.C. § 1332(a) provides jurisdiction over any claim when the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties. Importantly, diversity jurisdiction requires "complete diversity," meaning that "no plaintiff can be a citizen of the same state as any defendant." *M & B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1109 (8th Cir. 2023) (citation omitted) (emphasis omitted).

Because only state-law claims remain, the Court would only have original jurisdiction if Sloan-Brown established diversity jurisdiction. The complaint plausibly alleges that Sloan-Brown is a citizen of Minnesota. ECF No. 1 at 1. But Sloan-Brown pleads no facts establishing Westlake's citizenship. A non-incorporated entity like an LLC "is a citizen of any state where its members are citizens." *Great River Ent., LLC v. Zurich Am. Ins. Co.*, 81 F.4th 1261, 1263 (8th Cir. 2023); *see Key Enters., LLC v. Morgan*, No. 12-cv-2628 (PJS/JSM), 2013 WL 353911, at *1 (D. Minn. Jan. 29, 2013) ("[F]or purposes of diversity jurisdiction, [an LLC] takes the citizenship of all of its members and 'sub-members' and 'sub-sub-members.'"). Sloan-Brown states that Westlake is an LLC and provides a California address for Westlake. *See* ECF No. 1 at 2; ECF No. 1-6 at 1. But "merely alleging where an LLC is located or headquartered is insufficient." *Schultz v. Roberts-Gordon LLC*, No. 25-cv-2412 (JRT/SGE), 2025 WL 4228396, at *2 (D. Minn.

8

Oct. 21, 2025), *report and recommendation adopted sub nom. Schultz v. Gordon*, No. 25-cv-2412 (JRT/SGE), 2026 WL 383704 (D. Minn. Feb. 11, 2026). Instead, "to plead the citizenship of an LLC," a plaintiff must "plead the citizenship of each member and sub-member, if any." *Id.* Sloan-Brown has not done so, and the Court has no basis on which to conclude that Westlake is not a citizen of Minnesota. *Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) ("When jurisdiction is based on diversity of citizenship, the pleadings, to establish diversity, must set forth with specificity the citizenship of the parties."). It is Sloan-Brown's burden to plead "the grounds for the court's jurisdiction," Fed. R. Civ. P. 8(a)(1), and he has not met that burden here with respect to diversity jurisdiction.

The only other possible basis for the Court's jurisdiction over the remaining state-law claims, then, is "supplemental jurisdiction" under 28 U.S.C. § 1367(a). Supplemental jurisdiction allows a federal court to hear state-law claims if they are "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). But a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005)

9

(alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

That is appropriate here.  The Court has dismissed Sloan-Brown's federal claim well before trial.  Accordingly, the Court declines to exercise supplemental jurisdiction over his remaining state-law claims and dismisses those claims without prejudice, "so that [they] may be considered, if at all, by the courts of Minnesota." *Hervey v. County of Koochiching*, 527 F.3d 711, 726 (8th Cir. 2008).

### III.   Miscellaneous Motions

Alongside the complaint Sloan-Brown filed four motions.  *See* ECF Nos. 2–5.  In them, Sloan-Brown seeks expedited review of this case, ECF No. 2, to stay any threatened arbitration Westlake might seek to enforce, ECF No. 3, the immediate return of his car pursuant to Minnesota common law, ECF No. 4, and an order requiring Westlake to more definitely state its right to repossess the car, ECF No. 5.  Having determined that Sloan-Brown fails to state an FDCPA claim, and that supplemental jurisdiction over Sloan-Brown's state-law claims is not warranted, the Court denies each motion as moot.

CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Westlake's Motion to Dismiss (ECF No. 17) is **GRANTED**;

2.   Sloan-Brown's Emergency Motion for Expedited Hearing (ECF No. 2) is **DENIED** as moot;

3.   Sloan-Brown's Emergency Motion to Stay Arbitration (ECF No. 3) is **DENIED** as moot;

10

4.   Sloan-Brown's Emergency Motion for Replevin (ECF No. 4) is **DENIED** as moot;

5.   Sloan-Brown's Rule 12(e) Motion for a More Definite Statement (ECF No. 5) is **DENIED** as moot; and

6.   The complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 5, 2026                           *s/Laura M. Provinzino*
                                              Laura M. Provinzino
                                              United States District Judge